# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| JESSIE J. GROOMS, <br><br> Plaintiff, <br><br> vs. <br><br> NANCY A. BERRYHILL,[1] <br> Acting Commissioner of Social Security, <br><br> Defendant. | No. 16-CV-3078-KEM <br><br> **MEMORANDUM OPINION AND ORDER** |

Plaintiff Jessie Grooms seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for disability insurance (DI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Grooms argues that the administrative law judge (ALJ) erred in determining residual functional capacity (RFC). I **reverse** the Commissioner's decision and **remand** for further proceedings.

## I.  BACKGROUND

Grooms injured his back during a construction accident in 1999 and had back surgery in 2000. AR 437. He was able to continue working, but in 2013, his back pain began to worsen. Grooms had to take Family Medical Leave Act (FMLA) leave several times due to back pain—he was working for a company that packages and distributes herbicide chemicals, and his job involved sitting or standing while watching machinery, dumping twenty to forty pound sacks into barrels, and rolling fifty-pound barrels around to different machines. AR 44-45, 281, 366, 383. He quit in May 2013 after suffering

---

[1] Commissioner Berryhill is substituted for her predecessor in accordance with Federal Rule of Civil Procedure 25(d).

anxiety attacks that left him unable to work.  AR 437.  His need to miss work due to pain contributed to his anxiety.  AR 263, 270, 437.

Grooms filed an application for DI benefits on May 9, 2013, alleging disability beginning on May 2, 2013.  AR 13.  He alleged disability based on back and knee pain, hypertension, arthritis, anxiety, and depression.  AR 140.  He was referred for a psychological consultative examination with Dr. Dan Rogers, who submitted an opinion evaluating Grooms' mental RFC.  AR 144, 442-44.  State agency consultants Dr. Matthew Byrnes and Dr. Philip Laughlin evaluated his physical and mental RFC, respectively, in connection with the initial disability determination in August 2013.  AR 140-54.  Grooms' DI application was denied.  AR 154.  On reconsideration in October 2013, state agency consultant Dr. Jan Hunter evaluated his physical RFC, state agency consultant Dr. Myrna Tashner evaluated his mental RFC, and his application was denied once again.  AR 155-71.

Grooms requested a hearing before an ALJ.  AR 184.  He submitted as additional evidence a physical RFC opinion from one-time examining physician Dr. Basil Hassan, who met with Grooms on January 7, 2015.  AR 550-54.  The ALJ held a hearing on January 13, 2015, at which Grooms and a VE testified.  AR 32-33.  On February 27, 2015, the ALJ issued a written opinion following the familiar five-step process outlined in the regulations.[2]  AR 13-24.  The ALJ found Grooms suffers from the following severe

---

[2] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work."  *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* 20 C.F.R. § 404.1520(a)(4).  The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists."  *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004)).

impairments: degenerative disc disease, right knee patellofemoral syndrome, and anxiety disorder with post-traumatic stress disorder. AR 15. When determining Grooms' RFC, the ALJ did not fully credit Grooms' subjective complaints, instead finding:

> [Grooms] has the [RFC] to perform light work . . . such that he could lift and carry 20 pounds occasionally and 10 pounds frequently. He could stand or walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday. He could only occasionally climb, balance, stoop, kneel, crouch and crawl. He could not climb ropes, ladders, or scaffolds. He could only occasionally reach overhead bilaterally. He could have no more than occasional exposure to extreme cold. He would be limited to performing tasks learned in 30 days or less, involving only simple work-related decisions, requiring little to no judgment, with only occasional workplace changes.

AR 17, 21. When determining RFC, the ALJ assigned great weight to the state agency consultants' opinions, little weight to Dr. Rogers' opinion, and little weight to Dr. Hassan's opinion. AR 19-20, 22. The ALJ found that Grooms could perform his past work as a hand packager, and thus, that he was not disabled. AR 22-23.

The Appeals Council denied Grooms' request for review on April 27, 2016, (AR 1-3) making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Grooms filed a timely appeal in this court. Doc. 2.

## II. DISCUSSION

A court must affirm the ALJ's decision if it "is supported by substantial evidence in the record as a whole." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby*, 500 F.3d at 707. The court "do[es] not reweigh the evidence or review the factual record de novo." *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994). If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of

those positions represents the [ALJ's] findings, [the court] must affirm the decision." *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

Grooms argues that the ALJ's RFC determination is not supported by substantial evidence.[3] Grooms argues that the ALJ should have adopted the limitations opined by Drs. Rogers and Hassan. Particularly, Grooms emphasizes that he has greater limitations in concentration, persistence, and pace than found by the ALJ, that he has difficulties interacting with others, and that he would not be able to sit or stand for six hours in an eight-hour day without shifting positions or taking breaks.

Dr. Rogers opined in July 2013:

> Whatever the cause, [Grooms] would have moderate difficulty understanding and remembering instructi[o]ns, procedures, and locations. His pace is poor and combined with his low attention and concentration, he cannot reliably carry out instructions. He is not able to interact appropriately with supervisors, coworkers, or the public. Judgment seems to be good. It would be difficult for him to adjust appropriately to changes in the work place.

AR 444. The ALJ found the limitations opined by Dr. Rogers to be inconsistent with the treatment notes and unsupported by the overall record. AR 19. Instead, the ALJ relied on the RFC opinions of the state agency psychological consultants, who opined that Grooms had no mental limitations other than moderate restrictions in maintaining regular attendance and in performing at a consistent pace. AR 19-20, 151, 167-68.

Although Grooms' testimony (which the ALJ did not fully credit) is consistent with the limitations found by Dr. Rogers, substantial evidence supports the ALJ's decision to discount Dr. Rogers' opinion (and Grooms' testimony) of Grooms' mental

---

[3] Grooms also argues that the ALJ posed an inaccurate hypothetical to the VE, but he admits that the hypothetical reflected the ALJ's RFC finding and argues only that the hypothetical was inaccurate because the RFC determination was inaccurate. Doc. 19 at 8. This argument need not be addressed as a separate matter.

limitations based on inconsistencies with the overall record. Grooms suffered from a panic attack in April 2013 (before he quit working), and he was taken to the emergency room (ER) by his brother and treated. AR 395-97. At the ER, doctors prescribed Grooms a medication to take if he started to have a panic attack, and his primary care physician later prescribed a daily drug to help with anxiety. AR 56, 60, 399, 434.

Grooms has not had another panic attack that required hospitalization, although treatment notes reflect that he suffered one in September 2013. AR 474. Providers have observed no depression, anxiety, or agitation when evaluating Grooms' mood and affect since July 2013, supporting the ALJ's finding that Grooms' mental status exams have been generally unremarkable since he began taking medication. *See* AR 397, 439 (anxious or flat mood and affect in April and May 2013), 469 (neutral mood and affect in June 2013), 443 (CE observed anxious and depressed mood and affect in July 2013), 458, 480, 488, 496, 504 (August and December 2013 and April and September 2014 treatment notes reflect mood and affect show no signs of depression or anxiety). Grooms has also reported that medication improves his symptoms. In June 2013, he reported that his depression and anxiety had improved (although he still suffered some symptoms of anxiety) and that his medication was working. AR 468. In August 2013, he denied feeling depressed or down and also said his anxiety was better, although he did complain of being more irritable. AR 457-58, 462. In December 2013 and April 2014, in response to questions whether he felt depressed, whether he had lost interest in doing things, and whether he felt anxious or on edge, he responded, "not at all." AR 478-79, 486-87. At that same appointment in December 2013, however, he stated that he had been down since summer, and he then admitted that he had run out of his medication a week ago and did not have the funds to refill it. AR 479. Also, at the April 2014 appointment, he complained of depression, anxiety, and feeling stressed. AR 488. In September 2014, Grooms requested a mental-health referral, saying that he felt depressed because he was

5

hurting all the time, that he had suffered anxiety several times during the past two weeks, and that his mental-health medication did not seem to be working well anymore. AR 501-03. At that same appointment, Grooms answered, "not at all," in response to questions asking whether over the past two weeks, he had had little interest in doing things, felt down or depressed, or had been unable to stop worrying. AR 501-02, 504. And at the hearing in January 2015, Grooms testified that the daily drug he takes for anxiety improves his symptoms. AR 56.

Treatment notes from when Grooms had the panic attack in April 2013, and the month thereafter, reflect that Grooms had trouble with concentration and attention. AR 396-97, 440. No other treatment notes reflect that Grooms reported difficulties with concentrating, paying attention, or focusing, and providers did not evaluate such abilities (except for Dr. Rogers, who found Grooms had fair concentration and good attention in July 2013). AR 444. In function reports and pain questionnaires prepared for the disability determination, Grooms reported that pain did not affect his ability to concentrate in May 2013 (but reported that he had troubles concentrating and focusing in September 2013, after his disability application had been denied on initial review). AR 286, 299, 312. His brother's May 2013 third-party function report notes that Grooms has no trouble paying attention. AR 268. His brother also indicated that Grooms follows spoken and written instructions well. AR 268. Grooms reported the same in his June 2013 function report (although in September 2013, he reported being unable to follow written instructions and being somewhat able to follow spoken instructions). AR 294, 310.

The overall record reflects that Grooms stays home except for doctor's appointments, Narcotics Anonymous (NA) meetings, and weekly visits to the store for groceries and other necessary household items. Grooms lives alone and is able to watch television, make microwave meals, and perform household chores, although his pain (as

opposed to problems with concentration) affects his ability to perform chores (he must take breaks). He is visited frequently by his brother, who lives three miles away, but does not get many other visitors.

Substantial evidence supports the ALJ's decision not to include greater limitations in concentration, persistence, or pace, nor to include limitations related to interacting with people. The treatment notes reflect that Grooms' anxiety and depression were much improved by medication. The ALJ could decline to credit Grooms' subjective complaints, as well as Dr. Rogers' opinion, based on inconsistencies with the record (including Grooms' own function reports), and the ALJ could instead rely on the state agency medical consultants' opinions and an independent review of the medical evidence. *See, e.g.*, *Kamann v. Colvin*, 721 F.3d 945, 951 (8th Cir. 2013).

Substantial evidence does not support, however, the ALJ's finding that Grooms could sit or stand for six hours in an eight-hour day with normal breaks. The ALJ relied on the opinions of the state agency consultants (AR 148, 164), discounting Grooms' testimony and the opinion of one-time examining physician Dr. Hassan. Grooms' testimony and disability questionnaires, as well as the third-party function report completed by his brother, reflect that Grooms can only sit, stand, or walk for short periods (about twenty minutes) before needing to shift positions. AR 39-40, 51-52, 264, 268, 286, 291, 294, 296. Similarly, Dr. Hassan opined that Grooms can sit, stand, and walk for four hours in an eight-hour day, but that he would need to shift positions at will or take breaks to walk or lie down. AR 551-52.

The ALJ discounted Grooms' subjective complaints as being inconsistent with his activities of daily living, finding it significant that Grooms can complete personal care tasks independently, prepare simple meals, exercise and stretch, drive short distances, mow the lawn, and go shopping for groceries and other household items. AR 21. Grooms testified that he lives alone in a mobile home. AR 38-39. He is able to clean,

7

do laundry and dishes, and mow using his riding lawn mower, but he does all these activities in increments because he cannot stand or sit for long periods of time without feeling stiffness in his back. AR 39-40, 265, 291. He testified that he is able to make quick meals in the microwave. AR 39. He testified that his brother had to drive him to the hearing, which was an hour-and-a-half-long drive, so that he could recline in the van instead of sitting. AR 65. He also testified that they stopped four times so that he could get out and stand. AR 65. He drives short distances to NA meetings three times a month, to doctor's appointments, and to Walmart for groceries and other necessary items. AR 40, 42-43, 65, 266-67, 292-93. He goes shopping weekly and testified that he goes around midnight so that he is able to get in and out as quickly as possible. AR 40, 266, 286, 292. He is able to do his therapy exercises, stretches, and take short walks daily (and these activities help improve his pain). AR 52, 54-55, 264, 266, 268, 285-86, 290, 292, 294, 436, 457. He is able to care for his personal hygiene and grooming independently, although he has to lie down to put his pants on. AR 264, 290-91.

"Significant daily activities may be inconsistent with claims of disabling pain," *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005), but "a claimant need not prove she is bedridden or completely helpless to be found disabled," *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (quoting *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989)). Social Security Ruling (SSR) 85-16 provides that "'consideration should be given to . . . the [q]uality of daily activities . . . [and the a]bility to sustain activities, interests, and relate to others *over a period of time*' and that the 'frequency, appropriateness, and independence of the activities must also be considered.'" *Id.* at 922 (alterations in original) (quoting SSR 85-16, 1983-1991 Soc. Sec. Rep. 352 (1985)). "[T]o find a claimant has the [RFC] to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Id.* at 923 (quoting

*Thomas*, 876 F.2d at 669). Here, Grooms' reported activities of daily living do not require him to sit, stand, or walk for long periods, and as such, they are not inconsistent with his claims that he can sit, stand, or walk for twenty minutes before needing to shift positions. *See Leckenby v. Astrue*, 487 F.3d 626, 634-35 (8th Cir. 2007) (noting that ability to watch children as they played independently, watch television, play music, drive short distances, run errands very occasionally, and fold laundry was not "inconsistent with the need for rest periods"); *see also Reed*, 399 F.3d at 922-23 (claimant's ability to watch movies; prepare meals; craft for an hour but then stop due to frustration; make a bed but not put on fitted sheets; perform household chores but not vacuum or clean the bathtub; and go grocery shopping accompanied by a relative are not inconsistent with symptoms of anxiety, trouble concentrating, and discomfort around strangers).

The ALJ also suggested that the physical exam findings reflected in the treatment notes were inconsistent with the back-pain limitations that Grooms complained of and that Dr. Hassan found. AR 20. The ALJ recognized that providers "initially" observed back tenderness and muscle spasms in January and August 2013. AR 19, 363-70, 446-449, 455-460. Treatment notes from after August 2013 do not reflect whether the tenderness of Grooms' back was evaluated, although Dr. Hassan noted spinal tenderness during his examination in January 2015. AR 557. The ALJ also recognized that x-rays, MRIs, and CT scans revealed mild to moderate degenerative changes in Grooms' spine. AR 19, 361, 367-68, 382-83, 437, 463, 479, 490-94, 502, 546. And the ALJ noted that physical examinations consistently "revealed range of motion deficiencies throughout the spine" (including decreased ability to bend and extend), including in August 2013, December 2013, April 2014, May 2014, September 2014, and January 2015 (at Dr. Hassan's examination). AR 19, 458 480 486 495 504, 559. Treatment notes also reflect stiffness and hesitancy with position changes in August 2013, December 2013, April 2014, and May 2014. AR 458, 463, 480, 488, 495. Treatment notes also reflect that

9

Grooms alternated between sitting and standing at appointments in August 2013, December 2013, April 2014, and May 2014. AR 458, 480, 488, 495. Nevertheless, the ALJ found treatment notes inconsistent with Grooms' need to shift positions every twenty minutes due to back pain, noting that providers regularly found Grooms had full strength and range of motion in his extremities, normal gait, normal grip strength, and negative straight leg tests. AR 19-20. That objective tests related to Grooms' extremities showed normal results cannot be said to be inconsistent with Grooms' complaints of back pain or limitations caused thereby, especially when objective tests related to Grooms' back were consistently abnormal, as the ALJ recognized.

The ALJ also discounted Grooms' subjective complaints of back pain based on inconsistencies between his allegations of numbness and weakness in his hands and the treatment notes. Substantial evidence seems to support the ALJ's finding that treatment notes are inconsistent with Grooms' complaints regarding his hands and fingers. But I do not think that these inconsistencies, standing alone, "erode[] the claimant's credibility with regard to [all] self-reported symptoms and limitations," including the symptoms and limitations having nothing to do with Grooms' hands, such as his complaints of back pain. On remand, the ALJ may bolster her conclusion by pointing to more evidence of inconsistencies between Grooms' subjective complaints and the overall record, but as it is, substantial evidence does not support the ALJ's discounting Grooms' allegation that he must often shift positions from sitting to standing.

The only evidence to support the ALJ's finding that Grooms can sit, stand, and walk for six hours with normal breaks is the opinions of the state agency consultants. Standing alone, without support from the treatment notes, the state agency consultants' opinions cannot constitute substantial evidence for the ALJ's RFC finding. *See Papesh v. Colvin*, 786 F.3d 1126, 1133, 1135 (8th Cir. 2015).

Remand is appropriate "only if the record 'overwhelmingly supports'" a finding of disability, and the "ordinary practice is to remand 'out of . . . abundant deference to the ALJ.'" *Id.* (quoting *Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000)). The VE testified that no jobs would exist that Grooms could perform if he had to shift between sitting and standing every thirty minutes. AR 80. Substantial evidence could perhaps support a finding that Grooms would be able to stand a bit longer before needing to shift positions. And the ALJ may be able to bolster her credibility finding on remand, as discussed above. Thus, I find that remand to the Social Security Administration is appropriate.

### III. CONCLUSION

I reverse the decision of the Commissioner, enter judgment in favor of Grooms, and remand to the Social Security Administration for further proceedings consistent with this opinion.

**IT IS SO ORDERED**.

Dated this 29th day of September, 2017.

Kelly K.E. Mahoney
United States Magistrate Judge
Northern District of Iowa